United States District Court
Southern District of Texas
**ENTERED**
October 31, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ZULEMA LONGORIA, as next friend of M.L., <br> Plaintiff, | § § § | |
| v. | § | Civil Action No. 1:17-cv-00160 |
| SAN BENITO CONSOLIDATED INDEPENDENT SCHOOL DISTRICT, *et al.*, <br> Defendants. | § § § § § | |

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court is the "Magistrate Judge's Report and Recommendation" (hereafter "R&R") (Docket No. 38) in the above-referenced civil action. In response, Defendants filed "Defendants' Objections to the Magistrate's Report and Recommendation and Request for De Novo Review" (hereafter "Defendants' R&R Objections") (Docket No. 39), and Plaintiff filed "Plaintiff's Objections to the Magistrate Judge's Report and Recommendation and Request for De Novo Review" (hereafter "Plaintiff's R&R Objections) (Docket No. 40). In summary, the parties' objections challenge the following three R&R conclusions: (1) Plaintiff's Complaint properly pled a § 1983 claim under the First Amendment against Individual Defendants; (2) the Individual Defendants were entitled to qualified immunity because the First Amendment violation in question was *not clearly established* at the time of the alleged violation; (3) Plaintiff's § 1983 claim against the San Benito Consolidated Independent School District (hereafter "SBCISD") should be dismissed for failure to state a claim upon which relief can be granted. After a *de novo* review of the record, the R&R is **ADOPTED** as the Court's own, and the Court rules as follows: **(i)** "Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction Due to Mootness" (hereafter "Defendants' 12(b)(1) Motion") (Docket No. 33) is **DENIED; (ii)** "Defendants' Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim and Assertion of Qualified Immunity" (hereafter "Defendants' 12(b)(6) Motion") (Docket No. 11) is **GRANTED**; and **(iii)** Plaintiff's "Complaint and Request for Trial by Jury" (hereafter "Plaintiff's Complaint") (Docket No. 1) is **DISMISSED**.

The Court adopts the analysis of the R&R in its entirety, except for the following limited in scope issue: The Court holds that the "substantial disturbance" standard under *Tinker*[1] is not applicable to online lewd speech, originating off-campus during non-school hours; said clarification differs from the R&R, but does not affect the R&R's conclusion. Thus, although the Plaintiff's Complaint is being dismissed on other grounds, the Plaintiff's Complaint sufficiently alleged a § 1983 claim under the First Amendment against Individual Defendants.

I. **FACTUAL BACKGROUND**[2]

Zulema Longoria, on behalf of daughter, M.L., a minor (hereafter "Plaintiff") asserted a First Amendment claim against the following defendants in their individual capacities, pursuant to 42 U.S.C. §§ 1983, 1988[3]: Henry Sanchez (hereafter "Sanchez"), Ashley Camacho-Garza (hereafter "Camacho-Garza") and Velma Garcia (hereafter "Garcia") (collectively hereafter "Individual Defendants"). During the relevant time period of March 2017, Plaintiff was a student and varsity cheerleader at San Benito High School (hereafter "SBH"); Defendant Sanchez was the Principal of SBH; and Defendants Camacho-Garza and Garcia were the coaches of SBH's varsity cheerleading squad (hereafter "cheer squad"). Plaintiff alleged that on March 20, 2017, Defendants Camacho-Garza and Garcia met with Plaintiff and her mother, Zulema Longoria (hereafter "Plaintiff's Mother"), and wrongfully terminated Plaintiff from the cheer squad. At said meeting, Plaintiff was tendered a letter, signed by Defendants, Camacho-Garza and Garcia, which stated Plaintiff was dismissed from the cheer squad for having posted "inappropriate" posts on social media.[4] Said letter concluded Plaintiff accumulated ten (10) demerits as a result

---

[1] *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969).

[2] Unless otherwise noted, the facts herein were obtained from the R&R.

[3] Plaintiff also asserted a First Amendment claim against Dr. Adrian Vega (hereafter "Vega"), the former superintendent of SBCISD. After a *de novo* review of the file, the Court finds Plaintiff failed to "allege specific conduct [by Defendant Vega] giving rise to the constitutional violation[s]" in Plaintiff's well-pleaded complaint. *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999). Therefore, Plaintiff's individual capacity claims—including official capacity claims--against Vega are **DISMISSED**.

[4] Specifically, the letter referenced the following as the basis for Plaintiff's dismissal from the cheer squad:
> "As per the constitution on page 11 & 12 section 11.2 & 11.3 "Members who post items on social media containing inappropriate material including acronyms. [sic] (First offense received 2 demerits and second/third offense is 5 demerits.) [Plaintiff] has made 10 posts to her social media with inappropriate material. Due to her accumulation of demerits [sic] she will no longer be able to participate or be a member of the San Benito HS Cheerleading squad. On page 11 of the constitution [sic] under Article XI Demerits [sic] third paragraph; [sic] "Any member receiving 10 demerits will be dismissed immediately from the team.""

Docket No. 1-2. The cheer squad's constitution "set standards for acceptable behavior from the cheerleaders on the squad as well as other rules and regulations governing the cheerleaders." Docket No. 1 at 4, ¶ 17.

of ten (10) inappropriate social media posts, which—according to the cheer squad's constitution—warranted immediate dismissal from the cheer squad. Prior to becoming a cheerleader, Plaintiff, along with Plaintiff's Mother, were required to execute acknowledgement of receipt and acceptance of the cheer squad's constitution. A provision in said constitution mandated that personal posts on social media be appropriate—upholding the high standard of conduct of the cheer squad.

On March 31, 2017, Plaintiff filed a Level 1 grievance with Defendant Sanchez, the principal at SBH. In her grievance, Plaintiff denied having posted the social media posts attributed to her dismissal; Plaintiff argued that eight of the ten posts were social media "likes" of third parties' social media posts and were published off-campus on social media, after school hours. Moreover, the cheer squad constitution failed to define "inappropriate" and failed to notify Plaintiff that a social media "like" was equivalent to a social media post. The social media posts attributed to Plaintiff's dismissal were the following:[5]

   a. **"Likes": Social media posts published by third parties and tabbed "like" by Plaintiff:**

1. "Imma [sic] show my mom all the snaps from girls partying for spring break so she can appreciate her lame ass daughter some more";
2. A reference to braiding hair punctuated with the acronym "lmao";
3. "I fucking love texas [sic] man, it's so beautiful and just overall great! Why would anyone want to leave Texas :/";
4. a musing about happiness, posted by an account called "Bitch Code";
5. "I love kissing lmao";
6. "i [sic] don't fuck with people who lowkey try to compete with/ out do me";
7. "So let's set this shit straight I got zero hoes zero guys zero ppl [sic] entertaining me :-) k bye";
8. "I fucking love you so much and you don't even know it like bitch I hope you do great shit in life I believe in you."

   b. **Plaintiff's social media posts:**

9. Plaintiff replying "Yes" to the following question: "Did pope split you in half??";
10. Plaintiff replying "I have no idea" to the following question: "HOW are you still alive" to which third-person replies, "[n****] I hate twitter bro".

   c. **Other social media posts attributed to Plaintiff:**

---

[5] The following Twitter and Instagram entries were attached to Plaintiff's Rule 7(a) Reply and filed under seal to protect Plaintiff's identity and the identity of the third-parties. *See* Docket No. 27

3

11. A collage of grainy, unclear photos and caption which stated "bitch don't touch my . . .," posted by an account entitled "Horny Facts";
12. a text conversation between a daughter and her mother (referenced as "birthgiver") using the word "fuck" in their conversation;
13. a screenshot of Plaintiff's Twitter profile, displaying the title: "San Benito Varsity Cheer."

On April 12, 2017, Defendant Sanchez held a Level 1 grievance hearing; on April 28, 2017, a written ruling was issued by Sanchez, which upheld Plaintiff's dismissal from the cheer squad and held Plaintiff's First Amendment rights were not violated. Pursuant to the school district's regulations, the ruling by Defendant Sanchez as to Plaintiff's grievance was final and could not be appealed to a Level 2 or Level 3 grievance.

The Individual Defendants moved to dismiss Plaintiff's First Amendment claim on the basis that the ten social media posts attributed to her dismissal were "lewd" and said category of student speech was not protected by the First Amendment. *See* Docket No. 11 at 4-7. To determine whether Plaintiff stated a First Amendment claim under FRCP 12(b)(6), the R&R noted that "[i]f Plaintiff's speech d[id] not fall into one of the three exceptions carved out by the Supreme Court—*Fraser*, *Hazelwood*, and *Morse*[6]—it would be governed by the more general *Tinker* standard[7], and the speech is presumed protected absent facts to show the officials could reasonably forecast a substantial disruption." Docket No. 38 at 18. In support of Plaintiff's dismissal from the cheer squad, Individual Defendants argued that the "lewd" social media posts attributed to Plaintiff were punishable under the holding in *Bethel Sch. Dist. v. Fraser*.[8] The R&R held: "Plaintiff ha[d] adequately pleaded facts which, if true, could state a First Amendment claim[,]"; the R&R further reasoned that Plaintiff's social media posts were not punishable under *Fraser*, *Hazelwood*, or *Morse*. *Id.* at 29. Thereafter, the R&R generally and broadly concluded: "[i]f punishable, then, Plaintiff's speech would be governed by *Tinker* and there are no facts in the record to support a finding of disruption." *Id.*

---

[6] The Supreme Court identified three narrow categories of student speech deemed not protected under the First Amendment.
[7] The Supreme Court established in *Tinker* that students may exercise their First Amendment rights if "do[ne] so without materially and substantially interfering with the requirements of *appropriate discipline in the operation of the school and without colliding with the rights of others.*" *Bell v. Itawamba Cnty. Sch. Bd.*, 799 F.3d 379, 394 (5th Cir. 2015) (en banc) (citing *Tinker*, 393 U.S. at 513).
[8] 478 U.S. 675 (1986).

## II. DISCUSSION[9]

### A. Plaintiff's Lewd Social Media Posts

The well-pleaded facts reflect that Individual Defendants dismissed Plaintiff from the cheer squad for having posted "10 posts to her social media with inappropriate material." *See* Docket No. 38 at 2; Docket No. 1-2. In fact, Individual Defendants repeatedly argued that Plaintiff's dismissal was based on the lewdness of her social media posts and that said posts were not protected by the First Amendment. *See* Defendants' R&R Objections, Docket No. 39 at 4-6; Docket No. 38 at 20; Docket No. at 11 at 4-7.

### B. Lewd Speech under *Fraser*

Under *Fraser*, the Supreme Court held that public school officials may punish students for using lewd, vulgar, or indecent speech in the *school setting*. *Fraser*, 47 U.S. at 683, 685. However, the Supreme Court limited the scope of school officials' authority to discipline lewd speech to "[t]he determination of what manner of speech *in the classroom or in the school assembly* is appropriate." *Id.* at 683 (emphasis added). The Supreme Court recognized that lewd speech under *Fraser*, is not subject to the "substantial disturbance" test in *Tinker*. *Id.* at 685; *see also Morse v. Fredrick*, 551 U.S. 393, 405 (2007) ("Whatever approach *Fraser* employed, it certainly did not conduct the 'substantial disruption' analysis prescribed in *Tinker*."). Subsequently, in *Morse*, the Supreme Court made it clear that off-campus lewd speech is protected under the First Amendment—not subject to punishment by public school officials—in holding that "[h]ad Fraser delivered the same speech in a public forum outside the school context, it would have been protected." *Id.* at 405; *accord Bell*, 799 F.3d at 434 (Prado, J., dissenting) (implying that *Fraser* is inapplicable to purely off-campus speech); *see also* Fraser, 478 U.S. at 688 (Brennan, J., concurring in judgment) ("If respondent had given the same speech outside of the school environment, he could not have been penalized simply because government officials considered his language to be inappropriate[.]"). The Fifth Circuit did not address in *Bell* whether *Fraser*'s *school setting* expands to online, off-campus speech.[10] Nevertheless,

---

[9] For purposes of its analysis, the Court incorporates by reference Plaintiff's social media posts and "likes", see *supra* note 5 and accompanying text.

[10] *See Bell*, 799 F.3d at 391-92 (the Court declined to address whether *Fraser* applied to online speech because Bell's punishment was not based on "the lewdness of his speech"). The Fifth Circuit applied the *Tinker* standard in *Bell* and narrowly expanded public schools' authority to regulate and punish online, off-campus speech that intentionally threatens, harasses, or intimidates school officials; the Fifth Circuit, however, expressly limited the *Bell* standard application to online speech analogous to Bell's. *See Bell*, 799 F.3d at 396 (holding *Tinker* applied to specific facts at issue and declined to adopt a "rigid standard" applicable to online, off-campus speech).

5

persuasive authority provides that *Fraser* does not extend to online, off-campus speech. *See J.S. v. Blue Mountain Sch. Dist.*, 650 F.3d 915, 930-32 (3rd Cir. 2011) (holding "*Fraser*'s 'lewdness' standard cannot be extended to justify" punishment for student's use of "profane language outside the school, during non-school hours" on his Myspace profile); *accord Smith-Green*, 807 F. Supp. 2d at 779 (school officials could not rely on *Fraser* to justify students' dismissal from the cheer squad for two students' off-campus posting of lewd photographs on social media).

### C. Application of *Fraser* to Online, Off-Campus Speech

In the instant case, the ten posts attributed to Plaintiff's dismissal from SBH's cheer squad were posted on her private social media accounts, off-campus, and outside of school hours. *See* Docket Nos. 1 at 5; 26 at 3. In a case with similar facts—where a cheerleader was dismissed from her high school's cheer squad for off-campus social media posts—a Third Circuit case concluded that "the ability of a school to punish lewd or profane speech disappears once a student exits school grounds."[11]

Distinct from the facts in *B.L.*, in the instant case, Plaintiff and Plaintiff's Mother affirmatively signed the cheer squad's constitution, which stipulated agreement to dismissal from the cheer squad if Plaintiff received ten demerits for "inappropriate posts." Docket No. 38 at 2; Docket No. 1 at 5. Irrespective of said agreement, the Court is duly concerned with the Individual Defendants' subjective interpretation and enforcement of the cheer squad constitution

---

Furthermore, the Fifth Circuit concluded that "*Tinker* applie[d] to off-campus speech in certain situations." *Id.* at 394. For this reason, Plaintiff's R&R Objection as to the R&R's conclusion that Individual Defendants were entitled to qualified immunity under the *clearly established* prong is **OVERRULED**. Plaintiff argued that *Bell* "provided the precedential impact that placed the issue of when any form of discipline for off-campus online speech is beyond debate[.]" Docket No. 40 at 6. However, general application of the rule in *Bell*, fails to address the particular constitutional issue before the Court: whether a student's termination from extracurricular activities—as a form of discipline for off-campus online lewd speech constitutes a violation of the student's First Amendment rights. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2017) (the court must conduct a "clearly established" analysis "in light of the specific context of the case, not as a broad general proposition"). Neither the Supreme Court nor Fifth Circuit have set forth a *clearly established* prong for the scenario in this case; thus, Individual Defendants are entitled to qualified immunity on Plaintiff's free-speech claim.

[11] In *B.L.*, a student was granted a preliminary injunction after being dismissed from her high school cheerleading team for posting a photograph of her and a friend with their middle fingers up and a caption that read "fuck school fuck softball fuck cheer fuck everything." *B.L.*, 289 F. Supp. 3d at 610. The picture was taken and posted off-campus on a weekend, did not name the student's school, nor was she participating in any school event. In addressing the likelihood of success on the merits, the Court concluded that Third Circuit precedent precluded "the ability of a school to punish lewd or profane speech disappears once a student exits school grounds." *Id.* at 612-13. The court noted that the "Third Circuit ha[d] not offered a separate standard where the punishment was removal from an extracurricular activity." *Id.* at 613. Therefore, the District Court "refused to offer a different framework" than the one followed by the Third Circuit when "analyzing student speech cases where the punishment for speech involved a suspension from an extracurricular activity as opposed to a suspension or expulsion from school. *Id.* at 614.

as follows: (1) language in the cheer squad constitution implied protocol for first, second, and third offenses; said language was ignored; instead, ten posts were accumulated into one first and final offense; (2) the cheer squad constitution failed to define "likes" as the equivalent of "inappropriate posts", and further failed to define the term "inappropriate"; however, despite said lack of specificity and definition of relevant terms, the Individual Defendants resorted to the presumed option of last resort and dismissed the Plaintiff from the cheer squad.[12] Said punishment for online, off campus lewd speech protected by the First Amendment "... would be an unseemly and dangerous precedent to all the state, in the guise of school authorities, to reach into a child's home and control his/her actions there to the same extent that it can control that child when he/she participates in school sponsored activities." *Layshock v. Hermitage Sch. Dist.*, 650 F.3d 205, 207-08 (3rd Cir. 2011) (en banc). The *Layshock* Court noted that "Fraser d[id] not allow the school district to punish [the student] for expressive conduct which occurred outside of the school context."[13] Thus, even if the screenshots of Plaintiff's ten social media posts made their way to the *school setting,* online, off-campus lewd speech "does not mutate into on-campus speech" and remains protected under the First Amendment. *See Blue Mountain*, 650 F.3d at 940 (3rd Cir. 2011) (Smith, J., concurring) (citing *Layshock*, 650 F.3d at 218). In summary, Plaintiff's social media posts, even if designated as "lewd", which originated online, off-campus, and outside of the school context—are not subject to Individual Defendants' authority under *Fraser*. In addition, since Plaintiff's dismissal from the cheer squad exclusively resulted from online, off-campus lewd speech, a "substantial disturbance" analysis under *Tinker* was not applicable under the First Amendment. Thus, accepting Plaintiff's factual allegations as true at the pleading stage, the Court concludes that Plaintiff presented a legally sufficient First Amendment claim against Individual Defendants.

---

[12] *See e.g.*, Dismissal Letter, *supra* note 4, at 2 ("As per the constitution...'[m]embers who post items on social media containing *inappropriate material* including acronyms['] [will receive demerits per offense]...[Plaintiff] has made 10 posts to her social media with *inappropriate material*...[d]ue to her accumulation of demerits [sic] she will no longer be able to participate or be a member of the San Benito HS Cheerleading squad.") (alteration in original) (emphasis added) (referring to Plaintiff's posts, *supra* note 5, at 3-4 and accompanying text).

[13] *Id.* at 219 (citing *Morse*, 551 U.S. at 404). In *Layshock*, a high school student used a relative's home computer to create a Myspace "parody" profile of his high school principal, where the student posted that the principal engaged in drug and steroid use. *Id.* at 207-08. The Third Circuit held that the school district's punishment of expulsion and banning of extracurricular participation for the student's off-campus lewd and offensive social media posts violated the First Amendment. *Id.* at 219 (citing *Morse*, 551 U.S. at 404).

### D. Entitlement to Qualified Immunity

Despite the Court's ruling as to Plaintiff's First Amendment claim, the Court agrees with the R&R's conclusion that in March 2017, no law existed which "would have made it clear to 'every reasonable official' that extracurricular discipline for off-campus profanity implicates the same level of constitutional protections as other forms of discipline."[14] Said premise is supported by Plaintiff's general application of *Bell* to off-campus, online lewd speech.[15] The Court holds that "insufficient precedent existed [in March 2017] to provide [Individual Defendants] with 'fair warning'" that Plaintiff's dismissal from the cheer squad for lewd online off-campus speech violated the Plaintiff's First Amendment. *Jackson v. Ladner*, 626 Fed. App'x. 80, 88 (5th Cir. 2015). Accordingly, the Individual Defendants are entitled to qualified immunity as to Plaintiff's First Amendment claim. Because Plaintiff's Complaint failed to state a § 1983 claim against Defendant SBCISD[16], the Court holds Plaintiff's Complaint failed to state a claim upon which relief can be granted.

### III. CONCLUSION

IT IS THEREFORE **ORDERED, ADJUDGED,** AND **DECREED** that (i) Defendants' R&R Objections (Docket No. 39) and Plaintiffs' R&R Objections (Docket No. 40) are **OVERRULED**; and (ii) the R&R (Docket No. 38) is **ADOPTED**, therefore: (iii) Defendants' 12(b)(1) Motion (Docket No. 33) is **DENIED**; (iv) Defendants' 12(b)(6) Motion (Docket No. 11) is **GRANTED**; and Plaintiff's Complaint (Docket No. 1) is **DISMISSED** for failure to state a claim upon which relief can be granted. The Clerk of the Court is **ORDERED** to close the case.

---

[14] Docket No. 38 at 33-34.

[15] *See supra* note 10, at 5-6; Docket No. 40 at 6-7.

[16] The Court finds the terms in the cheer squad's constitution could not have provided the Board of Trustees of SBCISD "either actual or constructive knowledge of the alleged policy" as being unconstitutional. *Brindson v. McAllen Indep. Sch. Dist.*, 863 F.3d 338, 346 (5th Cir. 2017). SBCISD cannot be found to have delegated final policy making authority merely because SBCISD failed to investigate Defendant Sanchez' discretionary action in upholding Plaintiff's dismissal from the cheer squad. *See Doe ex. Rel Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 216-17 (5th Cir. 2005). For the same reason, Plaintiff's *theoretical right of review* argument also fails. *See* Docket No. 40 at 7-8. Therefore, Plaintiff failed to state a § 1983 claim against Defendant SBCISD; Plaintiff's R&R objections as to Defendant SBCISD are **OVERRULED**.

Signed on this 31st day of October, 2018.

_____
Rolando Olvera
United States District Judge